IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CLAY MILTON WHITE, | } |
| *Plaintiff*, | } |
| v. | } Civil Action No. H-07-2112 |
| HARRIS COUNTY, TEXAS and T.S. ROBINSON, Individually and in his Official Capacity, | } |
| *Defendants*. | } |

## OPINION AND ORDER

Presently before the Court are Defendant Harris County, Texas' (Harris County) motion for summary judgment (Doc. 26) and Defendant Timothy S. Robinson's (Deputy Robinson) motion for summary judgment (Doc. 28). Upon review and consideration of these documents, the responses and replies thereto, and the relevant legal authority, the Court finds that Harris County's motion should be granted and Deputy Robinson's motion should be granted-in-part and denied-in-part.

I.      Background and Relevant Facts

Plaintiff Clay Milton White (White) initiated suit against Defendants Harris County and Deputy Robinson alleging violations of his Fourth, Fifth, Eighth, and Fourteenth Amendment rights under 42 U.S.C. § 1983[1] (Doc. 18).[2] Specifically, White asserts his right to be free from unlawful arrest, the use of excessive force, and malicious prosecution.

---

[1] The Court notes that White also brings his claims under 42 U.S.C. §§ 1982, 1985, and 1988. However, only 42 U.S.C. § 1983 applies to this case.

[2] White initially filed this action on June 28, 2007 (Doc. 1). Several months later, on November 2, 2007, he filed an amended complaint (Doc. 18).

On June 23, 2005, Deputy Robinson, a deputy in the Harris County Sheriff's Office, was dispatched to an aggravated assault call at 12618 Silverglen Estates Drive, Houston, Texas (the Silverglen address).[3]  (Robinson Aff., Doc. 28 Ex. A at ¶ 4).  White's daughter, Catherine White, and his niece, Enjolee Davis (Enjolee), were having a physical altercation, and White unsuccessfully attempted to pull the girls away from one another.  (Robinson Aff. at ¶ 5; White Dep., Doc. 34 Ex. C at 23-24).  In a further effort to break up the fight, White decided to go to his bedroom, get his pellet gun, and strike Enjolee in the head with it.  (Robinson Aff. at ¶ 5; White Dep. at 24).  The blow to the left side of Enjolee's head caused a large gash, and she began bleeding.  (Robinson Aff. at ¶ 6).  As such, a witness to the incident called 911.  (Robinson Aff. at ¶ 6).

Deputy Robinson and an ambulance were dispatched to the scene.  (Robinson Aff. at ¶ 4).  Deputy Robinson took White's statement, and the ambulance transported Enjolee to Houston Northwest Hospital (HNH), where she received medical attention.  (Robinson Aff. at ¶ 6).  Enjolee's head wound required six to seven stitches to close.  (Robinson Aff. at ¶ 6).  After Robinson took White's statement, he went to HNH to speak with Enjolee and her mother, Jennifer Davis.  (Robinson Aff. at ¶ 6).  Based upon his investigation, Robinson determined that there was probable cause to show that White had assaulted Enjolee.  (Robinson Aff. at ¶ 7).  As such, he contacted Harris County Assistant District Attorney Dorian C. Cotlar (ADA Cotlar) and told him the results of the investigation.  (Robinson Aff. at ¶ 7).  ADA Cotlar advised Robinson that he would accept charges for Class A Assault against White.  (Robinson Aff. at ¶ 7; Doc. 28 Ex. G).

---

[3] At the time of the incident, White's wife, Pamela White, owned the home at this address.  (Doc. 28 Ex. B).

Robinson, therefore, returned to the Silverglen home to find White. (Robinson Aff. at ¶ 8). When he arrived, however, he learned that White was not there. (Robinson Aff. at ¶ 8). In fact, White had gone to stay at his property in Fresno, Texas. (Clay White Dep. at 31). Robinson asked White's wife, Pamela, to call White on the telephone, which she did. (Robinson Aff. at ¶ 8; Pamela White Aff., Doc. 34 Ex. B at ¶ 7). There is some dispute about the substance of the telephone conversation between White and Deputy Robinson, but the parties agree that White refused Deputy Robinson's request that he return to the Silverglen address. (Robinson Aff. at ¶ 8; Clay White Dep. at 26). The following day, Deputy Robinson followed ADA Cotlar's instructions and filed a probable cause affidavit. (Robinson Aff. at ¶ 9; Doc. 28 Ex. G).

White returned from Fresno on June 30, 2005. (Clay White Dep. at 38; Pamela White Aff. at ¶ 9). That evening, the Harris County Sheriff's Department dispatch received a call reporting a suspicious person at the Silverglen address.[4] (Doc. 28 Ex. D-2). Deputy Robinson was on patrol when this call came in, and he told the dispatcher he would check the call. (Robinson Aff. at ¶ 10). Deputy Michael Roy Carlile, Jr. (Deputy Carlile) also responded to the call. (Carlile Aff., Doc. 28 Ex. E at ¶ 4). Upon arriving at the Silverglen address, Deputy Robinson advised Deputy Carlile that he had filed a "to be" warrant on White stemming from a call from the same residence on June 23, 2005. (Robinson Aff. at ¶ 9; Carlile Aff. at ¶ 5). Neither officer had a copy of the arrest warrant with them nor did they know for certain if it was still valid. In fact, the Harris County District Attorney's Office had filed a motion to dismiss the assault charges for lack of probable cause on June 24, 2005. (Doc. 28 Ex. G).

Deputy Carlile and Deputy Robinson knocked on the front door of the Silverglen address, and a young black male about eleven or twelve years old answered the door. (Robinson

---

[4] On June 30, 2005, Enjolee received a call from her cousin, Trent Jefferson, who resides at the Silverglen address. (Enjolee Aff., Doc. 37 Ex. 2 at ¶ 8). He told Enjolee that White had returned home from Fresno, and, as such, Enjolee placed the 911 call to report that White could be found at the Silverglen address. (Enjolee Aff. at ¶ 8).

Aff. at ¶ 12; Carlile Aff. at ¶ 6). Deputy Robinson inquired if White was home, and the child said yes. (Robinson Aff. at ¶ 12). The events that transpired after the officers learned that White was in the home are in dispute. However, the parties agree that Deputy Robinson and Deputy Carlile entered the unlit bedroom and that Deputy Robinson placed White under arrest, allowed him to put on a pair of boxer shorts, handcuffed him, and led him outside to the patrol car. (Robinson Aff. at ¶¶ 12, 13; Carlile Aff. at ¶¶ 7, 8; Clay White Dep. at 39-40). Deputy Carlile waited inside while Pamela White got some clothes together for her husband. (Pamela White Aff. at ¶ 12; Carlile Aff. at ¶ 8). The parties agree that while Deputy Robinson was taking White to the patrol car, there was some commotion and that, at some point, Deputy Robinson decided to perform a take down maneuver on White causing both men to fall to the ground. (Robinson Aff. at ¶¶ 13, 14; Clay White Dep. at 41). White cut his face, but he refused medical treatment at the scene of the incident and when he arrived at the jail. (Robinson Aff. at ¶¶ 14, 15; Carlile Aff. at ¶ 9; Clay White Dep. at 43-45). The statements that the officers, the defendant, and the defendant's wife made to one another during the course of these events are in dispute.

Deputy Robinson subsequently called the Harris County District Attorney's Intake Division, told them what had transpired, and was advised to file charges for resisting transportation. (Robinson Aff. at ¶ 16). Instead, the Harris County District Attorney's Office filed a criminal complaint and information for resisting arrest which it subsequently dismissed on December 8, 2005, as the facts did not meet the elements for resisting arrest. (Doc. 28 Ex. G).

II.        <u>Legal Standard on Summary Judgment</u>

A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as

to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).  The substantive law governing the suit identifies the essential elements of the claims at issue and, therefore, indicates which facts are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).  If the moving party fails to meet its initial burden, the motion must be denied, regardless of the adequacy of any response.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

Once the movant meets its burden, however, the nonmovant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial.  *Celotex*, 477 U.S. at 323-24.   The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)).  Instead, the non-moving party must produce evidence upon which a jury could reasonably base a verdict in its favor.  *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).   To do so, the nonmovant must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial."  *Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir. 1998).  Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence.  *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102

F.3d 137, 139-40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied*, 506 U.S. 825 (1992). Nor are pleadings summary judgment evidence. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075). The non-movant cannot discharge his burden by offering vague allegations and legal conclusions. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Nor is the court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins*, Inc., 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)).

Nevertheless, all reasonable inferences must be drawn in favor of the non-moving party. *Matsushita*, 475 U.S. at 587-88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198-200 (5th Cir. 1988). The non-moving party may also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). In reviewing evidence favorable to the party opposing a motion for summary judgment, a court should be more lenient in allowing evidence that is admissible, though it may not be in admissible form. *See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.,* 831 F.2d 77, 80 (5th Cir. 1988).

III.	Discussion

    A.	Preliminary Matters

Section 1983 provides, in pertinent part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. "Rather than creating substantive rights, § 1983 simply provides a remedy for the rights that it designates." *Davenport v. Rodriguez*, 147 F. Supp. 2d 630, 635 (S.D.Tex. 2001) (quoting *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1578 (5th Cir. 1989)). Before the plaintiff can successfully assert section 1983 as a valid cause of action against the defendant, the plaintiff must first identify one or more specific constitutionally protected rights that have been infringed. *Id.* at 635 (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)).

White alleges constitutional violations under the Fourth, Fifth, Eighth, and Fourteenth Amendments for unlawful arrest, excessive force, and malicious prosecution. The Court finds that White's claims under section 1983 for constitutional violations under the Fifth, Eighth, and Fourteenth Amendments must be dismissed. "[T]he Fifth Amendment applies only to the actions of the federal government, and not to the actions of a municipal government as in the present case." *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996) (citing *Richard v. Hinson*, 70 F.3d 415, 416 (5th Cir. 1995)). "The protections of the Eighth Amendment against cruel and unusual punishment are limited in scope to convicted prisoners and do not apply to pretrial detainees[.]" *Id.* at 120 (citing *Ingraham v. Wright*, 430 U.S. 651, 671, n. 40 (1977); *Bell v. Wolfish*, 441 U.S. 520, 535, n. 16 (1979)). With respect to the Court's dismissal of White's

Fourteenth Amendment claim, "[a]ll claims that law enforcement officials have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard." *Graham*, 490 U.S. at 386.

With respect to White's allegation of malicious prosecution, the Court finds that this claim must be dismissed as it is time-barred. Under Texas law, "[a] person must bring suit for malicious prosecution . . . not later than one year after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE § 16.002(a). A malicious prosecution cause of action accrues upon the termination of the underlying criminal prosecution. *Leal v. Am. Nat'l Ins. Co.*, 928 S.W.2d 592, 596 (Tex. App.—Corpus Christi 1996, writ denied) (citing *Patrick v. Howard*, 904 S.W.2d 941, 944 (Tex. App.—Austin 1995, no writ)). White's cause of action accrued on December 8, 2005, the date on which the Harris County District Attorney's Office dismissed its case. (Doc. 28 Ex. G). Thus, the limitations period expired on December 8, 2006. White did not file suit until June 28, 2007, and, as such, his malicious prosecution claim is time-barred.

The only claims that remain are those brought under section 1983 for unlawful arrest and excessive force in violation of the Fourth Amendment.

B.      Claims Against Harris County

White alleges that Harris County is subject to municipal liability under section 1983 for two reasons. First, he asserts that Harris County has a widespread practice and custom of inadequately training and supervising its deputies and that this practice and custom was the moving force behind the deprivation of his constitutional rights. Second, White claims that Harris County ratified Deputy Robinson's behavior, thereby subjecting itself to liability. The Court does not find either of these arguments persuasive.

A "municipality," which includes other forms of local government such as a county, is a "person" under section 1983. *Hampton Co. Nat'l Sur., LLC v. Tunica County, Miss.*, 543 F.3d 221, 225 (5th Cir. 2008) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). In the Fifth Circuit, municipal liability under section 1983 requires proof of the following: (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). Section 1983 does not offer *respondeat superior* liability. *Id.* at 328.

A plaintiff can establish a municipal policy or custom by showing that the municipality failed to adequately train and supervise its officers. *Hinojosa v. Butler*, 547 F.3d 285, 296 (5th Cir. 2008) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). However, "[t]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 296 (quoting *Harris*, 489 U.S. at 388). Additionally, for "liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury." *Id.* (quoting *Harris*, 489 U.S. at 391). Therefore, "it is not enough for a plaintiff to show that the municipality's training program is, in a general sense, wanting. Rather, the plaintiff must prove an affirmative answer to the question 'Would the injury have been avoided had the employee been trained under a program that was not deficient in the *identified respect*?'" *Id.* (quoting *Harris*, 489 U.S. at 391) (emphasis added).

White contends that Harris County provided inadequate training and supervision by "persistently and repeatedly allowing its deputies to respond to calls after having been on

'Patrol/Tactical' training for several hours, or during those training/educational sessions." (Doc. 35 at 16). Specifically, White contends that Deputy Robinson's Texas Commission on Law Enforcement Officer Standards and Education (TCLEOSE) report indicates that he earned sixteen hours of credit on June 30, 2005, and that, on numerous occasions, he spent well over eight hours on "Patrol/Tactical" training in one session. White insists that "the many instances of such prolonged periods of training" establish that this practice is a conscious choice of Harris County in implementing its training programs and that Harris County either knowingly subjects its deputies to extensive periods of training in one session and then has them respond to 911 calls, or it knowingly allows them to interact with the public unsupervised while completing training exercises. White concludes, therefore, that this practice and custom was the "moving force" behind the deprivation of his constitutional rights on June 30, 2005.

As Harris County contends in its reply, the combined training hours are posted on the date of course completion. The fact that the course hours column on the report includes amounts of 16, 24, 30, 32, 40, and 56 hours supports this conclusion. Additionally, the affidavit of Elsia Adkins (Adkins), the Registrar at the Harris County Sheriff's Office Academy, states, "[t]hese documents indicate that on 6/30/2005, [Deputy] Robinson completed a course entitled 'K-9 Inservice Training' . . . The class was conducted over two days, eight hours per day, for a total of sixteen hours." (Adkins Aff., Doc. 37 Ex. A). Accordingly, the Court finds White's inadequate training and supervision argument unpersuasive.

White further argues that Harris County should be subject to liability for Sheriff Tommy Thomas' (Sheriff Thomas)[5] adoption of Deputy Robinson's alleged use of excessive force. Specifically, White relies upon the due process analysis in *Grandstaff v. City of Borger,*

---

[5] It is undisputed that, at the time of the incident, Sheriff Thomas was Harris County's final policymaker in the area of law enforcement.

*Tex.*, 767 F.2d 161 (5th Cir. 1985), to support his ratification theory.  As the Fifth Circuit noted in *Piotrowski*,

> This case is often mis-read as suggesting that municipal liability may be imposed for individual unconstitutional acts of lower-level employees.  *Grandstaff* recognized that isolated instances of police misbehavior do not prove acquiescence by a city policymaker in that conduct.  The court affirmed municipal liability, however, because the sheriff's actions after a police shooting essentially ratified the officers' use of excessive force.

*Piotrowski*, 237 F.3d at 578, n. 18.  In the instant case, the Court finds that White's reliance upon *Grandstaff* is misplaced.  It is clear from Sheriff Thomas' September 12, 2006, letter to White that he did not ratify Deputy Robinson's actions on the night of June 30, 2005.  (Doc. 34, Ex. B-2).  As Sheriff Thomas said, "the actions of the deputy were not in accordance with the Sheriff's Office policies and procedures . . . The Sheriff's Office has initiated appropriate actions in response to Deputy Robinson's reported conduct."  (*Id.*).  Thus, the Court agrees with Harris County that there was no ratification as White contends.

        C.      <u>Claims Against Deputy Robinson</u>[6]

White asserts claims against Deputy Robinson for unlawful arrest and excessive force in violation of his Fourth Amendment rights.  For the reasons set forth below, the Court finds that White's excessive force claim fails but that there is an question of material fact with respect to his unlawful arrest claim.

As the Supreme Court held in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), government officials performing discretionary functions generally are shielded from liability for

---

[6] White has sued Deputy Robinson in both his official and individual capacities.  Individual capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law.  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 237-238 (1974)).  Official capacity suits, however, "generally represent only another way of pleading an action against an entity of which an officer is an agent."  *Id.* at 165-66 (quoting *Monell,* 436 U.S. at 690, n. 55).  As long as the government entity receives notice and an opportunity to respond, an official capacity suit shall be treated as a suit against the entity.  *Id.* at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985)).  Thus, the analysis in Section III-B of this Opinion and Order regarding Harris County's liability applies to White's official capacity claims against Deputy Robinson.

civil damages as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Id*. at 818 (citing *Procunier v. Navarette*, 434 U.S. 555, 565 (1978); *Wood v. Strickland*, 420 U.S. 308, 322 (1975)) (footnote omitted). This is known as qualified immunity. Because qualified immunity is an affirmative defense, the defendant must plead and establish his entitlement to this defense. *Cronen v. Texas Dept. of Human Servs.*, 977 F.2d 934, 939 (5th Cir. 1992) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).

The Court uses a two-part test to determine the applicability of qualified immunity. *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994). First, the Court considers whether the "asserted constitutional injury involved a clearly established right at the time of the unfortunate event." *Id.* (citing *Hare v. City of Corinth, Ms.*, 22 F.3d 612, 614 (5th Cir. 1994)). Second, the Court considers whether the officer's actions were objectively reasonable. *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). "Objective reasonableness is assessed in light of legal rules clearly established at the time of the incident." *Id.* (citing *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990)). Police officers who "reasonably but mistakenly conclude that probable cause is present" are entitled to qualified immunity. *Id.* at 1017 (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Anderson*, 483 U.S. at 641)). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (citing *Hunter*, 502 U.S. at 229 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). If the defendant establishes his entitlement to this affirmative defense, the burden then shifts to the plaintiff "to rebut this 'good faith' defense." *Cronen*, 977 F.2d at 939 (quoting *Saldana v. Garza*, 684 F.2d 1159, 1163 (5th Cir. 1982)).

### 1. Unlawful Arrest

"An individual has a clearly established right to be free from unlawful arrest." *Davenport*, 147 F. Supp. 2d at 636 (citing *Duckett v. City of Cedar Park*, 950 F.2d 272, 278 (5th Cir. 1992)). An arrest may be unlawful if it is accomplished without due process of law as required by the United States Constitution. *Id.* (citing *Baker v. McCollan*, 443 U.S. 137, 144-45 (1979)). Therefore, under the Fourth Amendment, police officers are required to make a probable cause determination before performing a custodial arrest. *Id.* (citing *Martin v. Thomas*, 973 F.2d 449, 453 (5th Cir. 1992); *Fields v. City of S. Houston*, 922 F.2d 1183, 1189 (5th Cir. 1991)). A police officer has probable cause to arrest if, at the time of the arrest, he had "knowledge that would warrant a prudent person's belief that the person arrested had already committed or was committing a crime. *Id.* (citing *Gladden v. Roach*, 864 F.2d 1196, 1199 (5th Cir. 1989)).

The Court finds that there is a question of material fact regarding whether Deputy Robinson had probable cause to arrest White on June 30, 2005. After filing a complaint concerning Deputy Robinson's actions, White received a letter from Sheriff Thomas. It states,

> The Sheriff's Office has completed the investigation into your complaint concerning Deputy Robinson's actions while attempting to serve an arrest warrant at your residence on June 30, 2005.
>
> After a review of all the available information, supporting documentation and witness statements, it has been determined that the actions of the deputy were *not in accordance with the Sheriff's Office policies and procedures*.
>
> The Sheriff's Office has initiated appropriate actions in response to Deputy Robinson's reported conduct.

(Doc. 34 Ex. B-1) (emphasis added). It is not clear from this letter exactly which of Deputy Robinson's actions during his attempt to serve the arrest warrant violated the Sheriff's Office

policies and procedures. The Court cannot, therefore, say, as a matter of law, that Deputy Robinson established that his actions were objectively reasonable under the qualified immunity standard. As such, the Court denies summary judgment with respect to White's unlawful arrest claim under the Fourth Amendment.

### 2. Excessive Force

Claims involving the use of excessive force are based upon an alleged violation of the Fourth Amendment. *Davenport*, 147 F. Supp. 2d at 636 (citing *Graham*, 490 U.S. at 388). To prevail on an excessive force claim in the Fifth Circuit, a plaintiff must prove the following: "(1) a[n] . . . injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Spann v. Rainey*, 987 F.2d 1110, 1115 (5th Cir. 1993) (footnote omitted) (quoting *Johnson v. Morel*, 876 F.2d 477, 480 (5th Cir. 1989) (en banc)).

With respect to the first element that the plaintiff must prove, White claims that he received injuries to his knee and head as a result of Deputy Robinson's take down maneuver. Although a showing of "significant injury" is no longer required in the context of an excessive force claim, the Fifth Circuit does require the plaintiff have suffered at least some form of injury. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (citing *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999); *Jackson v. R.E. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993)). "The injury must be more than a *de minimis* injury and must be evaluated in the context in which the force was deployed." *Id.* at 314 (citing *Williams*, 180 F.3d at 703). Deputy Robinson admits that White cut his face during the take down maneuver. White, however, chose not to receive any medical treatment for this abrasion both at the scene of the incident and when he arrived at the jail. He has not provided any proof via medical records, photographic evidence, or

documentation that his injury is more than *de minimis*. Accordingly, White's excessive force claim must fail as he has not proven that he suffered any injury.

IV.        Conclusion

Accordingly, it is hereby ORDERED that Harris County's motion for summary judgment (Doc. 26) is GRANTED and the action against Harris County is dismissed in its entirety.  It is further ORDERED that Deputy Robinson's motion for summary judgment (Doc. 28) is GRANTED-IN-PART and DENIED-IN-PART.  The only cause of action remaining against Deputy Robinson is that for unlawful arrest.

SIGNED at Houston, Texas, this 31st day of March, 2009.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE